IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:20-cv-02296-RM-SKC

ELSON FOSTER,

        Plaintiff,

v.

BRIAN FLYNN, *et al.*,

        Defendants.

**RECOMMENDATION RE:
DEFENDANTS' MOTION TO DISMISS [#20]**

In Colorado, when an individual is charged with a violation of the Criminal Code, a mandatory protection order enters restraining the charged individual from harassing any witnesses or victims and, as pertinent here, may prohibit the individual from possessing or consuming alcohol or controlled substances. Colo. Rev. Stat. § 18-1-1001(3)(d). Such orders remain in effect "from the time that the person is advised of his or her rights at arraignment or the person's first appearance before the court and informed of such order until final disposition of the action." *Id.* § 18-1-1001(1).

In Colorado's 21st Judicial District (District), these protective orders are manually entered into a central registry system, which can be accessed by law

enforcement officers when they encounter individuals while on duty. [#1 at ¶18.][1] If the registry system shows a mandatory protective order, and the officer thinks the individual is violating the terms of that order, the officer will arrest the individual believing the officer has probable cause for the arrest based on the mandatory protective order. [*Id.* at ¶¶27-28.][2]

In February 2016, Deputy Public Defender Scott Burrill sent an email to the District's Chief Judge, David Bottger, notifying him that expired protective orders were not being removed from the central registry. [*Id.* at ¶33.] As a result, individuals who completed their sentences were, nevertheless, being arrested and charged with violating the expired orders. [*Id.* at ¶34.] Judge Bottger responded that it was a clerical issue, and a Unit Supervisor was addressing it. [*Id.* at ¶35.] But the problem persisted.

In June 2017, Burrill contacted the new (and current) Chief Judge, Brian Flynn, about the issue. Burrill explained that when defendants—due to earned good time credits—were discharged from their sentences early, the mandatory protective orders were not purged from the central registry despite their expiration. [*Id.* at ¶¶39-40.] At Judge Flynn's request, Burrill provided specific examples of individuals who

---

[1] The Court uses "[#__]" to refer to specific docket entries in CM/ECF.

[2] These facts are drawn from Plaintiff's Complaint and are presumed true for the purpose of ruling on Defendants' Motion.

were arrested on the basis of invalid mandatory protective orders that improperly remained in the central registry. [*Id.* at ¶¶43-44.]

Burrill contacted Judge Flynn again in June 2018, informing him the problem was ongoing. [*Id.* at ¶45.] In response, Judge Flynn explained that the District relied on the Supreme Court Administrator's Office (SCAO) to provide the District with a list of defendants who were close to completing parole or being released for time served for purposes of having those defendants' mandatory protective orders purged from the central registry, and that the District also relied on defendants to notify the Court when their sentences were completed. [*Id.* at ¶¶48-49.]

On July 25, 2018, Plaintiff Elson Foster was successfully discharged from parole related to a criminal conviction in the District. [*Id.* at ¶72.] However, the record of his protective order was not expunged from the central registry. Beginning on August 4, 2018, Plaintiff was arrested seven times due to his intoxication in violation of his expired mandatory protective order. [*Id.* at ¶¶68-144.] He brings this action pursuant to 42 U.S.C. § 1983, asserting Judge Flynn's failure to implement effective policies resulted in his arrests without probable cause in violation of the Fourth Amendment. [*Id.* at ¶¶159-93.] He also contends Charlene Benton, Clerk of Court for the 21st Judicial District, and Ruth Ann Brigham, Supervisor I, should be held liable for the allegedly unconstitutional policy. [*Id.* at ¶¶194-251.]

Defendants seek dismissal of Plaintiff's case in its entirety based on absolute judicial immunity, qualified immunity, and failure to state a claim upon which relief

3

can granted. [#20.] The Court has considered the Motion and related briefing and the relevant law. No hearing is necessary. For the following reasons, the Court RECOMMENDS the Motion be GRANTED IN PART and DENIED IN PART.

## LEGAL ANALYSIS

### A.   Failure to State Claim

The Court first addresses whether Plaintiff has failed to state a claim against Defendants Benton and Brigham. Plaintiff argues he has sufficiently alleged personal participation based on Defendants' supervisory roles in implementing Judge Flynn's policies. The Court concludes dismissal is appropriate.

**1. Standard of Review**

The Court accepts the well-pleaded facts as true and views the allegations in the light most favorable to the non-movant. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova*, 595 F.3d at 1124-25 (10th Cir. 2010) (internal citations omitted). The Court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotation marks omitted).

The *Twombly/Iqbal* pleading standard requires courts take a two-prong approach to evaluating the sufficiency of a complaint. *Id.* at 678–79. The first prong requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* at 678. The second prong requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Accordingly, in examining a complaint under Rule 12(b)(6), [courts] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). In other words, the court strips the complaint bare of the deficient allegations and determines whether the remainder plausibly states a claim for relief. But the standard is a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver,* 567 F.3d 1169, 1178 (10th Cir. 2009).

**2. Discussion**

In the Complaint, Plaintiff alleges Defendant Benton, as Clerk of Court, was responsible for overseeing the administrative functions of the District as directed by

5

Judge Flynn. [#1 at ¶204.] He also alleges Defendant Brigham, as Supervisor I, was responsible for supervising case processing and overseeing technical and administrative staff, including those responsible for expunging expired orders from the court system and central registry. [*Id*. at ¶¶233-35.] Plaintiff contends these Defendants can be held liable as supervisors. The Court disagrees.

While defendants who act in supervisory roles may be held liable, "there is no concept of strict supervisor liability under section 1983." *Ruark v. Solano*, 928 F.2d 947, 950 (10th Cir. 1991) (quoting *Harris v. Greer*, 750 F.2d 617, 618 (7th Cir. 1984)). For a supervisor to incur personal liability, there must exist an "affirmative link" between the constitutional deprivation and "either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (quoting *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993)). The requisite exercise of control to create an "affirmative link" need not be "on-the-ground, moment-to-moment control." *Davis v. City of Aurora*, 705 F. Supp. 2d 1243, 1263 (D. Colo. 2010). Rather, "where an official with *policymaking authority* creates, actively endorses, or implements a policy which is constitutionally infirm, that official may face personal liability for the violations which result from the policy's application." *Id*. (emphasis added).

Defendants argue (and Plaintiff appears to concede) the Complaint contains no allegations Benton or Brigham had any authority to alter or discontinue Judge Flynn's policy. Plaintiff argues authority to change the policy is unnecessary. He

6

instead relies on his allegations these Defendants "implemented" the policy because they had supervisory control over those District employees responsible for deleting the protective orders. This argument, however, mischaracterizes the conduct at issue.

Here, it is allegedly the District's policy to rely on lists from the SCAO and notifications from individual defendants to identify expired protective orders to delete. According to Plaintiff, this policy fails to capture the entire universe of expired orders, resulting in unconstitutional arrests. But the problem Plaintiff identifies is not in the *implementation* of a policy that relies on the SCAO or defendants to notify the District. To be sure, if these two methods were successful in identifying and deleting all expired protective orders, Plaintiff would have no case. Rather, the issue here is an alleged *failure to act*—specifically the failure to alter current policy, or implement a new one, to successfully identify those protective orders that fall between the interstices of SCAO lists and individual reporting.

The Complaint fails to plausibly allege Benton or Brigham had any authority to act to implement policy different from the one already in place. As a result, these two Defendants "played no more than a passive role" despite their supervision of those employees who perform the administrative tasks at issue. *Pemberton v. Patton*, 673 F. App'x 860, 869 (10th Cir. 2016). Consequently, the Court recommends the Motion be GRANTED insofar as it seeks dismissal of Benton and Brigham under Rule 12(b)(6).

## B. Absolute Judicial Immunity[3]

It is well established judges are absolutely immune from suit when "resolving disputes between parties who have invoked the jurisdiction of a court." *Forrester v. White*, 484 U.S. 219, 227 (1988). Administrative decisions, however, have not been similarly regarded as judicial, even when performed by a judge. *Id.* (demoting and terminating an employee was not done in any judicial capacity and immunity did not apply). "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they deal with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).

Judge Flynn argues issuing and vacating orders are inherently judicial acts and further contends he acted in his judicial discretion in waiting for the SCAO to alert the District when criminal defendants completed their sentences. [#20.] There is nothing inherently controversial about these arguments; however, the Court concludes they are premised on a misreading of Plaintiff's allegations and claims.

This confusion is abetted, in part, by both parties' repeated use of the word "vacate" in reference to removing the protective orders from the central registry. To "vacate" is to "nullify or cancel; make void; [or] invalidate." *Vacate*, Black's Law Dictionary (11th ed. 2019). But according to the plain language of the statute, when

---

[3] Because the Court has recommended dismissal of Benton and Brigham, the remaining analysis focuses only on Judge Flynn's conduct in implementing or maintaining the allegedly deficient policy.

a criminal case is dismissed, the defendant is acquitted, or the defendant completes his sentence, the mandatory protection order simply expires. Colo. Rev. Stat. § 18-1-1001(8)(b) (defining "Until final disposition of the action"). Here, Plaintiff successfully completed his sentence, and therefore, there was nothing for Judge Flynn to vacate or dismiss, which are judicial acts; rather, the protection order expired by operation of law, and reference to it should have been deleted or removed from the registry, which is an administrative task.

To be sure, there are no allegations Judge Flynn was individually responsible, in his judicial role, for vacating Plaintiff's mandatory protection order. Instead, Judge Flynn's alleged role in this case is one of policy maker. According to the Complaint, Judge Flynn implemented and/or maintained a policy on how expired protective orders would be expunged from the central registry system. [*See* #1 at ¶151.] As in *Forrester*, these allegations implicate a category of managerial decisions integral to administrating the court system, and while these policies are important "in providing the necessary conditions of a sound adjudicative system," crafting these policies is "not [itself] judicial or adjudicative." *Forrester*, 484 U.S. at 229.

The Court recommends DENYING the Motion and finding absolute judicial immunity does not apply to the allegations about Judge Flynn implementing or maintaining policies on the deletion of expired mandatory protective orders.

## C.   Qualified Immunity

Judge Flynn also contends even if judicial immunity does not apply, Plaintiff has failed to demonstrate the constitutional right was clearly established at the time of the alleged conduct. The Court disagrees.

### 1. Standard of Review

Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). Qualified immunity is "immunity from suit rather than a mere defense to liability [and] it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Whether defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

In resolving a motion to dismiss based on qualified immunity, the court must consider two things: (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. The plaintiff bears the burden of alleging facts and law to establish the inference that the defendant violated a clearly established federal constitutional or statutory right. *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994). If the plaintiff fails to satisfy either prong, the defendant is entitled to qualified immunity. *Pearson*, 555 U.S. at

10

236. The court has the discretion to consider these prongs in any order. *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011).

### 2. Discussion

In his Motion, Judge Flynn does not address the first prong of the qualified immunity analysis—whether Plaintiff has alleged a constitutional violation—and the Court confines its analysis accordingly. Regarding the second prong, for a right to be "clearly established," the legal principle at issue must exist as a matter of "settled law," meaning that it is "dictated by controlling authority or a robust consensus of cases of persuasive authority." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). While there does not have to be a case directly on point for a right to be "clearly established," existing precedent must place the statutory or constitutional question "beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551-52 (2017). The precedent must be sufficiently clear that "every reasonable official would interpret it to establish the particular rule that plaintiff seeks to apply." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). Accordingly, clearly established law must be very close to the act alleged in the complaint and is not defined at a "high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). This is because "general statements of law are not inherently capable of giving fair and clear warning to officers" that their actions are unlawful. *Id.* at 1153 (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)). An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's

11

shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014).

Judge Flynn argues there is no law "clearly establishing, or even suggesting, the policy at issue violated [Plaintiff's] Fourth or Fourteenth Amendment rights or was in any way obviously unlawful." [#20 at p.9.] In his Reply, he contends Plaintiff has defined the right—the right to be free from arrest without probable cause—at too great a level of abstraction. [#31 at p.5.] Judge Flynn then argues Plaintiff cannot show his "alleged conduct of relying on the [SCAO] and criminal defendants who had discharged their sentences early to inform the court of the fact before vacating [the protective orders] was clearly unlawful to the point of being beyond debate." [*Id.*] This, however, frames the right according to the precise facts of this case.

To be sure, the Court could find no cases mirroring the facts (or policy) at issue in the present matter. However, the right to be arrested only with probable cause has been clearly established for some time. *See Bickford v. Hensley*, 832 F. App'x 549, 555-56 (10th Cir. 2020) (citing *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002)) (An "officer violates an arrestee's clearly established Fourth Amendment right to be free of unreasonable seizure if the officer makes a warrantless arrest without probable cause."). To the extent that right is broad in the abstract, the Tenth Circuit and "the great weight of authority from other circuits clearly established by 2007 that officials may be held individually liable for policies they promulgate, implement, or maintain that deprive persons of their federally protected rights." *Dodds v.*

*Richardson*, 614 F.3d 1185, 1195-96, 1207 (10th Cir. 2010) (collecting cases). Here, the Court concludes this authority, when taken together, satisfies the "clearly established" prong of the qualified immunity analysis.

But even if this authority would not be sufficient to put defendants on notice, "the Supreme Court has warned that 'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). The Tenth Circuit has recognized a "sliding-scale" for those situations "[w]hen the public official's conduct is egregious, even a general precedent would apply with obvious clarity." *Lowe v. Raemisch*, 864 F.3d 1205, 1210 (10th Cir. 2017) (citing *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 377 (2009)). "'The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.'" *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (citing *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)).

In *Lowe*, the Tenth Circuit did recognize its sliding-scale approach may conflict with Supreme Court precedent requiring more robust qualified immunity because it may allow a court to "find a clearly established right even when a precedent is neither on point nor obviously applicable." *Id.* at 1211 n.10; *see also Vreeland v. Huss*, No. 18-CV-00303-PAB-SKC, 2021 WL 1171670, at *8 (D. Colo. Mar. 29, 2021) (collecting cases). But the Tenth Circuit has not overruled use of the sliding-scale and the Court

13

is, therefore, guided by this approach. *See Contreras ex rel. A.L. v. Sona Ana Cnty. Comm'rs*, 965 F.3d 1114, 1135 (10th Cir. 2020) (Baldock, J., concurring in part and dissenting in part) (the court is bound to apply the sliding-scale approach until either the Tenth Circuit or Supreme Court "sounds the death knell").

In the Court's view, the wrongfulness of Judge Flynn's alleged actions is self-evident. Judge Flynn is not only a licensed attorney, but he is also a chief judicial officer in the Colorado court system. It should have been clear to any reasonable official, particularly a chief judge, that maintaining a policy which results in arrests lacking probable cause based on expired protective orders, violates those individuals' Fourth Amendment Due Process rights. Indeed, according to the allegations, Judge Flynn did in fact know this policy was treading on the rights of individuals and nevertheless stayed the course. [#1 at ¶¶39-55.] For these reasons, the Court recommends DENYING the Motion insofar as it seeks qualified immunity for Judge Flynn's alleged implementation and maintenance of the unconstitutional policy.[4]

\*   \*   \*

Based on the above, the Court RECOMMENDS the Motion be GRANTED IN PART and DENIED IN PART—granted insofar as the Court recommends finding Plaintiff has failed to sufficiently allege claims against Defendants Benton and

---

[4] In so concluding the Court offers no commentary regarding the merits of these claims. Nor—given the Colorado Department of Corrections' role in taking custody of convicted defendants and calculating their sentences—does the Court make any observations as to whether the proper Defendants have been named in this case.

Brigham; and denied insofar as the Motion seeks dismissal based on judicial or qualified immunity.

DATED: June 18, 2021.

BY THE COURT:

S. Kato Crews
United States Magistrate Judge

**Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge and waives appellate review of both factual and legal questions. *Thomas v. Arn*, 474 U.S. 140, 148–53 (1985); *Makin v. Colorado Dep't of Corrs.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412–13 (10th Cir. 1996).**